# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR S. COLLINS,<br><br>                              Plaintiff,<br>  vs.<br><br>JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE; ROES 1 through 50,<br><br>                              Defendant. | CASE NO. 09 CV 0824 MMA (CAB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 16] |

On August 13, 2010, Defendant John E. Potter, Postmaster General for the United States Postal Service ("Defendant" or "Postal Service") filed a motion for summary judgment seeking judgment in its favor, and against Plaintiff Hector S. Collins as to all claims asserted in his complaint. [Doc. No. 16.] Plaintiff opposed Defendant's motion on November 29 [Doc. Nos. 26, 27], and Defendant filed its reply on December 6 [Doc. Nos. 30-32.][1] The Court in its discretion found Defendant's motion for summary judgment suitable for decision on the papers and without

---

[1] In connection with its reply brief, Defendant filed objections and moved to strike the majority of statements contained in Hector Collins' declaration in support of his opposition. [Doc. No. 30-3.] Defendant objects to numerous statements in Plaintiff's declaration on the grounds that they are vague, lack foundation, Plaintiff lacks personal knowledge, and the statements contain legal conclusions and/or opinions. To avoid an unnecessary and lengthy discussion of the objections, the Court advises the parties it has considered the objections. Many of the objections are well taken, and to the extent the Court has not referred to particular relevant statements or not otherwise addressed that testimony herein, the Court does so because it has sustained the objection. However, to the extent that the Court discusses and relies on Plaintiff's statements in this Order, it finds that the testimony is admissible and overrules any objection to it.

oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. No. 33.] For the reasons discussed below, the Court **GRANTS** Defendant's summary judgment motion.

## BACKGROUND

The following facts are not reasonably in dispute. Plaintiff Hector S. Collins, a Mexican-American male, initiated this action for discrimination he allegedly experienced during his employment as a custodian for Defendant. [*Def.'s Sep. Stmt. of Undisputed Facts* ("SUF"), Doc. No. 16-7, SUF 1-2.][2] Plaintiff has worked as a custodian at Defendant's Margaret L. Sellers Processing and Distribution Center ("MLSPDC") in San Diego since approximately June 21, 1997. [SUF 2; *Def.'s Mot. for Summ. J.*, Doc. No, 16-8, p.1.]

On or about June 15, 2008, Plaintiff discovered that one of the tires on his vehicle, which was parked in Defendant's MLSPDC's parking lot, had been punctured. [*Complaint*, ¶12.] On or about June 25, 2008, Plaintiff contacted Postal Service Equal Employment Opportunity ("EEO") counselor Suzanne Marchione regarding the incident. [SUF 3; Johnson Decl., Doc. No. 16-6, ¶1.] The matter was assigned Agency Case No. 1F-921-0025-08. [SUF 4.] Shortly thereafter, Plaintiff filed an informal complaint, known as an Information for Pre-Complaint Counseling ("IFPCC"). [SUF 5.] The IFPCC indicated Plaintiff believed he was being targeted by Filipinos and that his punctured tire was a result of vandalism. [*Def.'s Notice of Lodgement*, Doc. No. 16-1, Exh. 1.][3] He further stated that Defendant did not do anything when Plaintiff reported the alleged vandalism, as retaliation for two prior EEO complaints Plaintiff filed in September 1998 and March 2001. [*Id.*; SUF 6-7.]

At his deposition Plaintiff testified he told Martin Graham, a Maintenance Manager with the Postal Service, that he wanted to view the surveillance video of the parking lot for the night his tire was punctured. [*Def.'s Supp. NOL*, Doc. No. 30-5, Exh. 10 at p.051:13-25.] According to Plaintiff, Mr. Graham responded that he had already reviewed the video, and "[t]here is nothing there." [*Id*. at p.051:22-23; *see also* Graham Decl., Doc. No. 16-3, ¶¶1-2 (the video did not show

---

[2] Plaintiff is represented by counsel.

[3] All references to "Exhibit" or "Exh." herein refer to Defendant's exhibits attached to its Notice of Lodgement, documents 16-1 and 30-5.

1  anyone puncturing Plaintiff's tire, nor anyone walking or standing within twenty feet of Plaintiff's
2  vehicle).]  Similarly, Plaintiff testified he made a request to David Decker, a Supervisor of
3  Maintenance Operation with the Postal Service, that he be allowed to review the surveillance
4  video. [Exh. 10 at p.052:12-16; Decker Decl., Doc. No. 16-4, ¶1.]  Again, according to Plaintiff,
5  Mr. Decker indicated he had already reviewed the video, and did not see anyone puncture
6  Plaintiff's tire, nor walk within twenty feet of Plaintiff's vehicle while it was parked in the lot.
7  [Exh. 10 at p.052:17-24; Decker Decl. ¶2.][4]  Despite the managers' responses that they reviewed
8  the video surveillance, Plaintiff filed an EEO complaint alleging a failure to investigate.  [*See* Exh.
9  10, p.052:18-21.]

10  On July 30, 2008, approximately one month after Plaintiff's tire was punctured, Supervisor
11  Jaime Tan called a meeting with the "Tour 3 night shift custodians," which included Plaintiff.
12  [Tan Decl., Doc. No. 16-5, ¶1.]  At the meeting, Mr. Tan informed the custodians "that they were
13  not to walk around the MLSPDC parking lot after their shift ended other than to get to their cars."
14  [*Id.*]  Mr. Tan made the announcement to promote the night custodians' safety because their shifts
15  ended around 11:00 p.m. when it was dark, visibility was poor, and management perceived a
16  higher danger of crimes being committed against them.  [*Id.*; SUF 16.]

17  Because Plaintiff had been walking around the parking lot after work for the past four
18  months without reprimand, he interpreted Mr. Tan's instruction as retaliation against him for filing
19  the EEO complaint challenging management's alleged failure to investigate the vandalism to his
20  automobile.  [SUF 10.]  Thus, in a letter dated August 2, 2008, Plaintiff sought to amend his
21  IFPCC to add a claim for retaliation based on Mr. Tan's instruction that Plaintiff could not walk
22  around the perimeter of the MLSPDC parking lot after work.  [SUF 8-9.]

23  The record indicates Defendant investigated Plaintiff's allegations of discrimination and
24  retaliation regarding (1) management's perceived failure to investigate Plaintiff's vandalism
25  report; and (2) the restriction that Plaintiff could not walk around the perimeter of the parking lot
26  after work.  [Exh. 3.]  Documents created during the investigation reveal that Mr. Graham

---

[4] According to Mr. Graham's and Mr. Decker's declarations they watched the surveillance video together. [Graham Decl. ¶2; Decker Decl. ¶2.]

1  indicated he reviewed the surveillance video after Plaintiff reported his punctured tire, but the

2  video did not reveal anyone committing the alleged vandalism. [*Id.*] Mr. Graham also reported

3  that the "security video is no longer available due to a subsequent system crash." [*Id.*] With

4  respect to the prohibition on employees walking around the parking lot after their shift ended,

5  Maintenance Operations Manager Ralph Abos told the EEO Dispute Resolution Specialist he was

6  not aware that Plaintiff was walking around the parking lot until after Plaintiff filed his EEO

7  complaint. [*Id.*] But when Mr. Abos learned of Plaintiff's behavior, he told Mr. Tan to instruct

8  the custodians not to walk around the lot after work because it was unsafe; employees were to

9  leave the premises at the end of their work day. [*Id.*] Ultimately, the Specialist concluded there

10  was no resolution to Plaintiff's complaints, and provided Plaintiff a notice of right to file a formal

11  complaint. [SUF 11-12; Exh. 4.]

12  On or about September 2, 2008, Plaintiff timely filed a formal EEO complaint reasserting

13  his discrimination and retaliation claims ("EEO Complaint").[5] [SUF 22, 23; Exh. 5.] On

14  September 11, 2008, the Postal Service dismissed Plaintiff's EEO Complaint for failing to state a

15  claim. [SUF 24-25; Exh. 6.] Plaintiff timely appealed the decision, which the Equal Opportunity

16  Employment Commission ("EEOC") affirmed on January 14, 2009. [SUF 26-28; Exh. 7.]

17  On April 20, 2009, Plaintiff filed the present action against Defendant alleging two counts

18  for discrimination and retaliation based on race in violation of 42 U.S.C. §§ 2000e *et seq*. [*See*

19  *generally, Complaint*.] Specifically, Plaintiff asserts Defendant violated his Title VII rights: (1)

20  "when it learned that one of his car tires had been punctured on June 15, 2008 in the employee

21  parking lot, but purportedly did not investigate the incident or take any action; and (2) when

---

[5] Regarding the alleged vandalism, the Court notes Plaintiff's informal complaint submitted on June 25, 2008 indicates, "I feel my vehicle is being targeted by Filipinos." [Exh. 1.] At deposition Plaintiff testified he believes Jaime Manzano and Mabini Bernales worked together to puncture Plaintiff's tire. [Exh. 8.] The record, however, does not indicate these individuals are Filipino. Nor has Plaintiff identified admissible evidence showing Manzano or Bernales were involved.

Additionally, Plaintiff's formal EEO Complaint does not state the vandalism itself was an act of discrimination, but rather a result of a lack of security. "(Issue: 1) My car was vandalized, on June 15, 08 this was the 5th time my vehicle was vandalized on (MLS) parking lot - due to lack of security - since 1999." [Exh. 5.] Thus, to the extent Plaintiff attempts to argue that the alleged vandalism constitutes an act of discrimination, the Court rejects this unsupported assertion. Moreover, Plaintiff's IFPCC indicates that a Filipino employee's vehicle was vandalized around the same time, which suggests Plaintiff's race and heritage were not relevant to the vandalism.

management told Plaintiff and the other custodians at his pay location that they were expected to leave the MLSPDC premises, including the facility's parking lot, after their shifts ended." [Doc. No. 16-8, p.1.]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks and citations omitted).

A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a summary judgment motion it is not enough to simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). However, when assessing the record to determine whether there is a "genuine issue for trial," the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in [its] favor." *Horphag*, 475 F.3d at 1035 (citation omitted). On a summary judgment motion, the court may not make credibility determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

**DISCUSSION**

Plaintiff's Title VII action challenges two discrete actions by his employer. First, Defendant allegedly discriminated against Plaintiff by failing to investigate his report that his vehicle was vandalized in Defendant's parking lot as retaliation for EEO Complaints Plaintiff filed in 1998 and 2001. Second, Defendant retaliated against Plaintiff for filing his EEO Complaint challenging Defendant's failure to investigate the vandalism, by instructing the custodians they could not walk around the parking lot after their shift ended. The Court considers each alleged discriminatory act in turn.

**I.    FAILURE TO INVESTIGATE REPORT OF VANDALISM TO PLAINTIFF'S VEHICLE**

On or about June 15, 2008, Plaintiff discovered that one of the tires on his vehicle had been punctured while it was parked in Defendant's parking lot. Plaintiff reported the alleged vandalism to his supervisors, but believes nothing was done. Plaintiff asserts management did not respond to his report as retaliation against him for filing two prior EEO complaints in September 1998 and March 2001. As evidence of Defendant's discriminatory motive, Plaintiff stated that when a Filipino employee's car was vandalized in the lot in May 2008, supervisor Graham reviewed the video surveillance and the employee was compensated for the damage. [Exh. 1.]

Defendant asserts the Court should grant summary judgment in its favor as to Plaintiff's first claim because he cannot establish a *prima facie* case that the above conduct constitutes discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). To establish a *prima facie* case of discrimination, Plaintiff must show: (1) that he belongs to a statutorily protected class, (2) he is qualified for his position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside of his protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). This burden, however, is not onerous. *Lyons*, 307 F.3d at 1112. "At the summary judgment stage, the requisite degree of proof necessary to establish a *prima facie* case is minimal and does not even need to rise to the level of a preponderance of the evidence. *Id*.

Here, the parties do not dispute that Plaintiff satisfies the first two elements. Plaintiff is a member of a protected class—Mexican—and he is qualified for his position as a custodian with

the Postal Service. The parties do, however, dispute whether Plaintiff suffered an adverse employment action, and whether other similarly situated custodians outside of Plaintiff's protected class were treated more favorably. If Plaintiff produces sufficient evidence to establish these remaining two elements, the burden will shift to the Postal Service to articulate a "legitimate, nondiscriminatory reason" for its challenged conduct. *Davis*, 520 F.3d at 1089. If Defendant satisfies this burden, then Plaintiff must provide evidence that Defendant's reason is pretextual. *Id.* (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)). Accordingly, the Court first considers whether management's response to Plaintiff's report of vandalism resulted in an adverse employment action against Plaintiff.

An adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).[6] Defendant argues that even if the Court assumes management did not investigate the alleged vandalism, its failure to investigate does not constitute an adverse employment action. Management's purported failure to review the surveillance video or permit Plaintiff an opportunity to do so—even if done as retaliation for Plaintiff's September 1998 and March 2001 EEO Complaints—did not cause Plaintiff to suffer any change to the terms or conditions of his employment. Plaintiff was not demoted, fired, or reassigned, nor were his benefits or pay reduced.

/ / /

/ / /

---

[6] Collecting cases, compare *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation") with *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1994) (a "bruised ego" is not enough); *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties, or prestige insufficient); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (reassignment to more inconvenient job insufficient).

1       In response, Plaintiff summarily asserts Defendant's behavior constitutes an adverse employment action, but provides no explanation or pertinent authority to support his position.[7] Instead, Plaintiff argues there are disputed issues of material fact concerning the investigation because "he received three conflicting stories from Defendant regarding the purported 'investigation' into the vandalism" and "another, similarly situated employee outside of Plaintiff's protected class was treated more favorably when this other employee's car was vandalized in the same parking lot of Defendant." [*See* Doc. No. 26, p.8.] Plaintiff's argument fails for at least two reasons.

      First, Plaintiff's position that Defendant provided him "three conflicting stories" about the status of the investigation is unsupported. The only evidence Plaintiff provides to show that Defendant has changed its story with respect to the investigation is Plaintiff's own declaration, in which he vaguely asserts that: he was first "informed at the time of the most recent vandalism to my car . . . the video surveillance system covering that parking lot . . . was not functioning properly"; he was "alternatively told that Defendant viewed the surveillance video and could not ascertain the identity of the perpetrator who vandalized my car"; and finally, he "was also told that the surveillance video had been thrown away or otherwise permanently disposed of." [Collins Decl. ¶¶2, 4, 5.] It is well-established, however, that a plaintiff's uncorroborated and self-serving testimony, on its own, does not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). In addition, as Defendant properly points out, Plaintiff's declaration fails to identify who made any of these statements on Defendant's behalf or when they were made.

///

---

[7] Plaintiff relies on *Accardi v. Super. Ct.*, 17 Cal. App. 4th 341, 351 (1993), a sexual discrimination case, in which the California Court of Appeal held it should consider the entire record (i.e. the totality of the circumstances) when deciding whether the plaintiff endured a hostile work environment, because "[a] view of the events from beginning to end enables the trier of fact to see their relationship to one another, and consequently their meaning and significance." *Accardi* does not, however, support Plaintiff's assertion that management's response to his vandalism report constitutes an adverse employment action. To the extent Plaintiff relies on *Accardi* to encourage the Court to consider acts beyond Defendant's two discrete actions identified in his operative EEO Complaint, the Court addresses this argument, *infra*, in Section III.

Second, Plaintiff's theory that Defendant provided him conflicting stories contradicts his own deposition testimony.[8]  At deposition, Plaintiff testified that he asked Messrs. Graham and Decker whether they had reviewed the surveillance video, and each replied that they had reviewed it and the video did not revealed anything.  [Exh. 10; *see also* Graham Decl. ¶2; Decker Decl. ¶2.]  When Plaintiff inquired whether he could review the video, his request was refused because the tape was no longer available after Defendant's system crashed.  [Exh. 10.]  Notes from the EEO Specialist's Inquiry Report created in response to Plaintiff's IFPCC similarly reflect that Defendant reviewed the surveillance tape and that the tape was no longer available due to a subsequent system crash.  [Exh. 3.][9]  Accordingly, Plaintiff's declaration that contradicts his own earlier sworn testimony does not create a material issue of fact regarding Defendant's investigation.

In addition, Plaintiff has not demonstrated the existence of any adverse employment action. Defendant's investigation (or alleged lack thereof) into Plaintiff's allegations of vandalism has no bearing on the terms or conditions of Plaintiff's employment.  The steps that management did or did not take to identify the perpetrator and compensate Plaintiff for his punctured tire had no identifiable affect on Plaintiff's title, work assignments, pay, benefits, or any other terms or conditions of Plaintiff's employment.  Thus, Defendant's response to Plaintiff's reported vandalism did not constitute an adverse employment action.  Moreover, the Court declines to infer,

---

[8] Plaintiff's opposition states he testified about the conflicting stories at his deposition, but Plaintiff does not attach any excerpts from his testimony. [Doc. No. 26, p.8.] Instead, the record only contains excerpts submitted by Defendant, which indicate Plaintiff's managers told him they viewed the surveillance video, it did not reveal anything, and it was no longer available for Plaintiff to review. [Exh. 10.]

[9] During his deposition, Plaintiff also indicated he spoke to his co-worker, Elva Santos, who allegedly saw Jaime Manzano "pacing in front of [Plaintiff's] car . . . on his cell phone" the day the vehicle was vandalized. [Exh. 8.] Based on this information, and Plaintiff's knowledge that Mabini Bernales had access to the security panel, Plaintiff concluded that Manzano was talking to Bernales on his cell phone in the parking lot, while Bernales was monitoring the surveillance panel to inform Manzano when the camera turned away from Plaintiff's car and Manzano could not be seen puncturing Plaintiff's tire. When Plaintiff reported the incident to his manager Ralph Abos, Plaintiff suggested Manzano and Bernales were responsible, but did not tell Mr. Abos about Ms. Santos. [*Id.*] Setting aside the fact that Plaintiff's conspiracy theory is completely unsupported by any admissible evidence, if his theory were accepted, it actually reinforces Messrs. Graham and Decker's statements that they reviewed the surveillance video and did not see anyone puncture Plaintiff's tire, because Bernales allegedly told Manzano when to puncture the tire so the video would not capture him doing it.

based on nothing more than Plaintiff's speculation, that Defendant discriminated against Plaintiff by refusing to investigate a vandalism report in 2008 because Plaintiff filed EEO complaints approximately a decade earlier in September 1998 and March 2001. Courts have refused to infer causation between a protected activity (i.e. filing EEO paperwork) and an alleged adverse action when far less time has elapsed. *See, e.g., Manatt v. Bank of America*, 339 F.3d 792, 802 (9th Cir. 2003) (rejecting causation when approximately one year had elapsed) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" and citing cases for the proposition that a three-month and four-month time lapse is insufficient to infer causation)).

To the extent Plaintiff asserts Mr. Tan's instruction to all Tour 3 night shift custodians that they must leave Defendant's premises immediately after their shift ends is an adverse employment action, this argument also fails for the reasons discussed below. Accordingly, Plaintiff's inability to show that management's purported lack of investigation into his report of vandalism had any affect on the terms and conditions of his employment is fatal to his *prima facie* case of discrimination. The Court therefore need not consider whether another employee received more favorable treatment after his vehicle was vandalized.[10]

## II. INSTRUCTION TO CUSTODIANS TO LEAVE WORK AT THE END OF THEIR SHIFT

Plaintiff's second cause of action alleges Defendant retaliated against him for filing the EEO Complaint challenging Defendant's investigation into the reported vandalism by reprimanding Plaintiff and prohibiting him from walking around the perimeter of Defendant's parking lot after his shift ended. Specifically, on or about July 30, 2008, Plaintiff's supervisor Jaime Tan called a meeting with all Tour 3 night shift custodians, including Plaintiff, and instructed them that they could not walk around the parking lot after their shift ended late at night. Because the meeting occurred after Plaintiff submitted his EEO Complaint challenging

---

[10] Even if the Court were inclined to consider Defendant's treatment of other employees, Plaintiff provides no probative admissible evidence regarding the other alleged vandalism incident, the employee involved, nor management's response. Plaintiff's vague statements in his declaration are entirely unhelpful.

1  management's response to his vandalism report, and Plaintiff asserts he had previously been
2  walking around the perimeter of the parking lot after work for four months without any trouble, he
3  believes the new restriction was retaliatory. [*Complaint*, ¶14; Tan Decl. ¶1.] Accordingly, in a
4  letter dated August 2, 2008, Plaintiff sought to amend his June 2008 EEO Complaint to include the
5  allegedly retaliatory conduct. [Exh. 2.] The Postal Service investigated this issue in its Inquiry
6  Report. [Exh. 3.] The Dispute Resolution Specialist's notes from the investigation indicate
7  Plaintiff's supervisor Ralph Abos was not aware that Plaintiff was walking around the perimeter of
8  the parking lot until after he filed his EEO Complaint. Mr. Abos instructed that *all* Tour 3 night
9  shift custodians, including Plaintiff, be told to leave Defendant's premises immediately at the end
10 of their shifts due to safety concerns. Plaintiff asserts, however, Defendant is not neutrally
11 enforcing the restriction.

12         To withstand Defendant's summary judgment motion on his retaliation claim, Plaintiff
13 must establish a *prima facie* case of retaliatory conduct by showing that: (1) he engaged in a
14 protected activity; (2) he suffered an adverse employment action; and (3) there is a causal
15 connection between the protected activity and the adverse employment action. *Davis*, 520 F.3d at
16 1093-94 (citation omitted). While Plaintiff's burden to demonstrate a *prima facie* case is not
17 onerous, he must produce sufficient direct or circumstantial evidence to create a genuine issue of
18 material fact.

19         The parties do not dispute that Plaintiff satisfies the first element because his EEO
20 Complaint challenging management's investigation constitutes protected activity. Defendant
21 argues, however, that Plaintiff did not suffer any adverse employment action related to his EEO
22 Complaint. As stated above, an adverse employment action is one that "constitutes a significant
23 change in employment status, such as hiring, firing, failing to promote, reassignment with
24 significantly different responsibilities, or a decision causing a significant change in benefits."
25 *Burlington Indus.*, 524 U.S. at 761. And, Plaintiff again makes the conclusory assertion that he
26 suffered an adverse employment action without providing an explanation or any pertinent
27 authority to support his position. Rather, Plaintiff mistakenly focuses on Defendant's allegedly
28 selective enforcement of an admittedly facially neutral restriction.

Plaintiff concedes he only walked around the MLSPDC lot when he was on a break or after his shift ended, and he did so for "health reasons." [*See* Exhs. 2, 9.] Plaintiff makes no connection between walking around the lot and his status as a custodian for Defendant. Nor does Plaintiff argue his title, assignments, pay, or benefits are affected by the restriction. Instead, Plaintiff requests the Court to infer that the prohibition was retaliatory because he had been walking around the lot without incident for months before he filed his EEO Complaint in June 2008, and because he has purportedly observed employees of non-Mexican heritage walking around the parking lot after Defendant imposed the restriction. Plaintiff misses the point.

To establish a *prima facie* case of retaliation, Plaintiff must identify some action taken by Defendant that adversely impacted the terms, conditions, or status of his employment. Although Plaintiff may be frustrated that he can no longer exercise in Defendant's parking lot, Plaintiff has not argued that access to the lot outside of work hours for personal use is a benefit or condition of his employment. Indeed, Defendant provided unrebutted evidence that it is unaware of any policy or agreement that gives Postal Service employees a right to remain on Defendant's premises for non-business purposes after their shifts end. [Tan Decl. ¶2.] As the Ninth Circuit recently reiterated, "not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce an injury or harm." *Hellman v. Weisberg*, 360 Fed. Appx. 776, 778 (9th Cir. 2009) (citing *Burlington*, 548 U.S. at 67). Here, Plaintiff has not identified any compensable injury because there is no evidence that the terms of his employment have been affected by Defendant's actions.[11] Accordingly, summary judgment in Defendant's favor is appropriate.

### III. OTHER ALLEGED ACTS OF DISCRIMINATION

Finally, Plaintiff asserts the Court should consider events beyond the two identified in his June 2008 EEO Complaint when deciding whether Plaintiff suffered an adverse employment action. Specifically, Plaintiff urges the Court to consider issues raised in his prior EEO complaints because: he "filed numerous EEO complaints against Defendant throughout his employment" in

---

[11] The Court further notes that Plaintiff's allegations of selective enforcement do not create a material issue of fact because the only evidence to support this accusation consists of Plaintiff's own general statements in his declaration. [*See, e.g.,* Collins Decl. ¶6; *Villiarimo*, 281 F.3d at 1061 (citation omitted) (plaintiff's uncorroborated and self-serving testimony, on its own, does not create a genuine issue of material fact).]

1998, 1999, 2000, 2001, 2002, 2008, 2009, and 2010; it is undisputed Plaintiff exhausted his administrative remedies as to these complaints; and Defendant was aware of the additional complaints during discovery and even questioned Plaintiff about them during his deposition. [Doc. No. 26, p.2, 4, 9-10.] Therefore, Plaintiff argues, "all of these complaints are at issue here" and when taken together, demonstrate Defendant created a "hostile, harassing and discriminatory" work environment for Plaintiff. [*Id*. at 2, 4.] The Court disagrees.

Plaintiff's position that the Court should rely on additional acts of alleged discrimination beyond those raised in Plaintiff's 2008 EEO Complaint is problematic for several reasons. First, it is not undisputed that Plaintiff exhausted his administrative remedies regarding his 1998, 1999, 2000, 2001, 2002, 2009 and 2010 EEO complaints. [*See* Doc. No. 16-8, p.4-5; Doc. No. 30, p.8-10.] And, the record contains no documentation regarding these additional EEO complaints. Consequently, the Court is unable to determine that Plaintiff properly exhausted these claims and that they are not barred by the applicable statutes of limitations.

Second, to the extent Plaintiff is attempting to assert a hostile work environment claim[12] by introducing additional conduct, this argument also fails because he has provided the Court no specific information regarding any of the additional alleged discriminatory conduct from which it can conclude Plaintiff's work environment was hostile or abusive. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal marks and citations omitted). However, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. *Id*.; *Manatt*, 339 F.3d at 798 ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

---

[12] Plaintiff's complaint does not make clear whether he intended to assert a hostile work environment claim. Plaintiff sets forth two distinct causes of action for "Unlawful Employment Discrimination Based on Race" and "Unlawful Reprisal"; he does not assert a hostile work environment claim. Nor does the complaint make any reference to the events brought to the Court's attention for the first time in his opposition to Defendant's motion for summary judgment. Instead, the complaint contains only a general allegation that he suffered "harassment and intimidation." [*See Complaint*.]

amount to discriminatory changes in the terms and conditions of employment."). Plaintiff's vague averments about conduct that allegedly occurred at unspecified times during the past thirteen years of his employment with Defendant are insufficient.

Although Plaintiff's opposition lists several allegedly discriminatory actions by Defendant, including—improper docking of Plaintiff's pay, Defendant's refusal to give Plaintiff an award (tee-shirt) he earned, assigning Plaintiff the less-favorable job of cleaning the bathrooms, making Plaintiff perform work outside of his job description, and fabricating minor violations to discipline Plaintiff—he makes no effort to provide any details or support for the conduct alleged.[13]  Plaintiff does not indicate when the alleged events took place, who engaged in the offensive conduct, or even what exactly occurred. Rather, Plaintiff speaks in generalities and offers only his own vague declaration to support his assertions of discriminatory conduct.

For example, in his declaration Plaintiff avers:

> 7. Other employees with the same job title, description and responsibilities who are not of Mexican descent are regularly treated more favorably than I with regard to job assignments, rest breaks and other employment matters. These other employees are routinely given more desirable and less difficult assignments. One example is that I am assigned to clean the bathrooms more frequently and on less desirable days than these other employees.

[Collins Decl., Doc. No. 29, ¶7.]  Plaintiff's statement is not probative of discrimination. *See Fazio*, 125 F.3d at 1331 (generalized, vague, and unsupported allegations are not sufficient to survive summary judgment) (citation omitted); *Villiarimo*, 281 F.3d at 1061 (citation omitted). He does not identify a specific occasion when he was assigned a less desirable or more difficult assignment, who assigned him the task, or which employees of non-Mexican descent did not receive similar assignments. And, Plaintiff makes no effort to demonstrate he exhausted his administrative remedies regarding the above conduct, nor that a claim would be timely. Indeed, the only information available to the Court regarding the allegedly improper bathroom assignment indicates the offending assignment occurred in April 2001—over nine years ago. [*See* Exh. 11.]

---

[13] The Court acknowledges *Defendant* attached brief excerpts from Plaintiff's deposition testimony to its summary judgment motion, which appear to discuss some of the alleged discriminatory conduct. [*See, e.g.,* Exhs. 11-14.] But the excerpts do not provide the Court a clear picture of what actually occurred, and Plaintiff did not provide any additional deposition testimony, nor provide any documentary evidence to support a hostile work environment claim.

1  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts
2  alleged in timely filed charges." *Porter v. Cal. Dept. of Corrections*, 419 F.3d 885, 893 (9th Cir.
3  2005) (citations omitted).

4  Third, although the Court is entitled to consider the totality of the circumstances
5  surrounding the alleged discrimination, including otherwise time-barred events outside of the two
6  discrete actions Plaintiff alleged in the operative EEO Complaint, it may do so only when the
7  "outside" conduct sufficiently relates to the conduct directly before the Court. *See Lyons,* 307
8  F.3d at 1105-06 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Here, in the
9  absence of any detail, the Court cannot conclude the alleged additional discriminatory acts have
10 any relationship to the two acts of purported discrimination and retaliation properly before the
11 Court. Accordingly, the Court's consideration is limited to management's alleged failure to
12 investigate Plaintiff's punctured tire and Defendant's subsequent instruction that Plaintiff cannot
13 walk around the parking lot at night after his shift ends. These actions, whether considered
14 separately or together, are inadequate to demonstrate a *prima facie* case against Defendant for
15 discrimination.

### CONCLUSION

17  For the reasons stated herein, the Court **GRANTS** Defendant's motion for summary
18 judgment as to Plaintiff's Title VII discrimination and retaliation claims. The Clerk of Court is
19 instructed to enter judgment in favor of Defendant John E. Potter, Postmaster General for the
20 United States Postal Service, and terminate the case file.

21  **IT IS SO ORDERED.**

23 DATED: December 22, 2010

25  Hon. Michael M. Anello
    United States District Judge